FLORENCE T. NAKAKUNI  2286
United States Attorney
District of Hawaii

THOMAS A. HELPER  5676
Assistant U.S. Attorney
300 Ala Moana Boulevard
Room 6-100
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Fax:  (808) 541-3752
Email:  Tom.Helper@usdoj.gov

Attorneys for United States of America

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>and<br>HAWAII DEPARTMENT OF<br>HEALTH<br><br>Plaintiffs,<br><br>vs.<br><br>HAWAII DEPARTMENT OF<br>TRANSPORTATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. _____<br><br>COMPLAINT |

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency (EPA), and the Hawaii Department of Health (DOH), by and through its undersigned attorneys, files this complaint and allege as follows:

## NATURE OF ACTION

1.     This is an action brought against the State of Hawaii Department of Transportation (HDOT) pursuant to Sections 309(b) and (d) of the Clean Water Act (CWA), 33 U.S.C. §§1319 (b) and (d), and Hawaii's Water Pollution Law, Hawaii Revised Statutes (HRS) Chapter 342D. The United States alleges that HDOT has violated and continues to violate the CWA, and DOH alleges that HDOT has violated HRS §342D-50, by failing to comply with the terms of the Hawaii National Pollutant Discharge Elimination System (NPDES) General Permit for municipal storm water discharges at Honolulu and Kalaeloa Barbers Point Harbors. The United States and DOH further allege that HDOT violated an administrative order issued by EPA in 2009 requiring the correction of violations and deficiencies in HDOT's storm water management plans for the two harbors.  The United States and DOH seek injunctive relief and civil penalties.

2

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the Clean Water Act (CWA), 33 U.S.C. § 1319(b), and supplemental jurisdiction over State law claims under 28 U.S.C. §1367(a).

3.    Venue is proper in the District Court of Hawaii pursuant to 28 U.S.C. §§ 1391 and 1395, and Section 309(b) of the CWA, 33 U.S.C. §1319(b), because it is the judicial district in which HDOT is doing business, in which the harbors, facilities, and storm water conveyances are located, and in which the violations occurred.

4.    Authority to bring this action on behalf of the United States is vested in the Department of Justice pursuant to 28 U.S.C. § 516.  DOH has authority to bring its action under HRS §§3432D-9, 342D-11, 342D-30 and 342E-4.

5.    The United States has provided notice of the commencement of this action to the State pursuant to Section 309(b) of the Act, 33 U.S.C. §1319(b).

## THE DEFENDANT

6.    HDOT is an agency of the State of Hawaii.  HDOT is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. §1362(5), and HRS 342D-1, and 342E-1.  HDOT is separately amenable to suit under the CWA.

7.    HDOT owns, operates and maintains the storm water conveyances, pipes, and roadways at Honolulu and Kalaeloa Barbers Point Harbors on the Island of Oahu, Hawaii.

## LEGAL BACKGROUND: THE CLEAN WATER ACT

8.    Section 301(a) of the CWA, 33 U.S.C. §1311(a), provides that "the discharge of any pollutant by any person shall be unlawful" except in compliance with Section 402 of the CWA, 33 U.S.C. §1342.

9.    The term "discharge of a pollutant" includes "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. §1362(12). The term "pollutant" includes, inter alia, solid waste, sewage, garbage, wrecked or discarded equipment, rock, sand, cellar dirt, and industrial, municipal, and agricultural waste. 33 U.S.C. §1362(6). "Point sources" include "any discernible, confined and discrete conveyance, including but not limited to any . . . ditch, channel, tunnel, conduit, [or] discrete fissure . . . from which pollutants are or may be discharged." 33 U.S.C. §1362(14).  Section 502(7) of the CWA defines the term "navigable waters" as "the waters of the United States." 33 U.S.C. §1362(7).

10.    Section 402(a) of the CWA creates the National Pollutant Discharge Elimination System (NPDES) and provides that the Administrator of the EPA, or delegated States, may issue permits which authorize the discharge of any pollutant

directly into waters of the United States, but only in compliance with applicable

requirements of the CWA, and/or such other conditions as the Administrator

determines are necessary to carry out the provisions of the CWA. 33 U.S.C.

§ 1342(a).

11.    Section 402(b) of the CWA authorizes states to administer the NPDES

program with approval of the Administrator of the EPA. 33 U.S.C. §1342(b).

12.    Section 402(p)(4) of the CWA, 33 U.S.C. §1342(p)(4), establishes that a

discharge from a municipal separate storm sewer system (MS4) serving a

population of at least 100,000 (medium and large MS4s) requires an NPDES permit

issued under Section 402 of the CWA for storm water discharges. Section 402(p)(6)

authorizes EPA to issue regulations designating other storm water discharges to be

regulated.

13.    In 1999, EPA exercised its authority under Section 402(p)(6) of the Act, 33

U.S.C. § 1342(p)(6), and issued regulations to, among other things, establish

NPDES permitting requirements for MS4s serving a population of less than

100,000 (Phase II).  64 Fed. Reg. 6872 (December 8, 1999); 40 C.F.R. Parts 9, 122,

123, 124.

14.    Regulations governing the storm water program are set out at 40 C.F.R.

§§122, 123, and 124.  EPA's storm water regulations, like the CWA itself, require

5

operators of regulated MS4s to obtain an NPDES permit authorizing discharges from the MS4. 40 C.F.R. §§122.26(c)(1) and 122.32(a).

15.   40 C.F.R. §122.26(b)(18) defines a "municipal separate storm sewer system" to mean:

> a conveyance or system of conveyances (including roads with drainage systems, municipal streets, catch basins, curbs, gutters, ditches, man-made channels or storm drains): (i) owned or operated by a State. . . .; (ii) designed or used for carrying storm water; (iii) which is not part of a Publicly Owned Treatment Works. . . .

16.   40 C.F.R. § 122.26(b)(16) defines "small municipal separate storm sewer systems" or "small MS4s" to mean all separate storm sewers that are:

> (i) [o]wned or operated by the United States, a State, city, town, borough . . . or other public body (created by or pursuant to State law) having jurisdiction over disposal of . . . storm water. . . . [;] (ii) [n]ot defined as "large or medium" municipal separate storm sewer systems[;] [and] (iii) . . . includes systems similar to separate storm sewer systems in municipalities, such as systems at military bases, large hospital or prison complexes, and highways and other thoroughfares. . . .

17.   Under the CWA, permits for discharges from all MS4s must require, among other things, "controls to reduce the discharge of pollutants to the maximum extent practicable, including management practices, control techniques, and system, design and engineering methods, and such other provisions as the Administrator or the State determines appropriate for the control of such pollutants." CWA Section 402(p)(3)(B), 33 U.S.C. §1342(p)(3)(B).

6

18.   Small (or Phase II) MS4 permits must require that operators of regulated MS4s "develop, implement, and enforce a storm water management program [SWMP] designed to reduce the discharge of pollutants from [the] MS4 to the maximum extent practicable (MEP) to protect water quality, and to satisfy the appropriate water quality requirements of the Clean Water Act."  40 C.F.R. §122.34(a).

19.   40 C.F.R. §122.34(b) sets forth the following "minimum control measures" that must be included in SWMPs in order to satisfy the MEP standard: (1) public education and outreach on storm water impacts; (2) public involvement/participation; (3) illicit discharge detection and elimination; (4) construction site storm water runoff control; (5) post-construction storm water management in new development and redevelopment; and (6) pollution prevention/good housekeeping for municipal operations.  This section of the regulations also contains guidance on how to develop and implement best management practices (BMPs) for each minimum control measure.

20.   Additionally, in order to ensure that permittees will develop adequate BMPs, EPA developed a slate of BMPs to assist permittees in developing their programs. Final NPDES Phase II Rule, 64 Fed. Reg. 68722, 68763 (December 8, 1999).

21.   The regulations also provide that compliance with the MEP standard is met

through: "Implementation of [BMPs] consistent with the provisions of the [SWMP]

required pursuant to this section and the provisions of the permit required pursuant

to § 122.33."

40 C.F.R. § 122.34(a).

22.   The NPDES permit program has been delegated to the State of Hawaii

pursuant to Section 402(b) of the Act, 33 U.S.C. § 1342(b). The Hawaii Department

of Health (HDOH) issues NPDES permits, including MS4 permits, in the State of

Hawaii.

23.   On October 25, 2002, HDOH adopted a general permit for small municipal

separate storm sewer systems (Small MS4s), which became effective on November

7, 2002.  It expired on October 21, 2007, and was subsequently re-adopted by

HDOH with an effective date of October 22, 2007.  The current general permit, the

"Hawaii NPDES General Permit Authorizing Discharges of Storm Water and

Certain Non-Storm Water Discharges from Small Municipal Separate Storm Sewer

Systems" (Hawaii Small MS4 General Permit) will expire on October 21, 2012.

Hawaii Administrative Rules 11-55, Appendix K.

24.   Hawaii's Small MS4 General Permit includes, among other things, the

requirement that permittees "develop, implement, and enforce a storm water

8

management plan designed to reduce the discharge of pollutants from the [MS4] to the maximum extent practicable in order to protect water quality and satisfy the appropriate water quality requirements of the Clean Water Act." Hawaii Small MS4 General Permit, Part 6. Part 6(a) of the Hawaii Small MS4 General Permit also requires permittees to include the following six minimum control measures, along with implementation dates and rationales, in their SWMPs: (1) Public Education and Outreach, (2) Public Involvement/Participation, (3) Illicit Discharge Detection and Elimination, (4) Construction Site Runoff Control, (5) Post-Construction Storm Water Management in New Development and Redevelopment, and (6) Pollution Prevention and Good Housekeeping. As explained in the Permit Rationale "compliance with the MEP requirement can be attained by developing a storm water management plan which is composed of six elements that, when implemented together, are expected to reduce pollutants discharged into receiving waterbodies to the MEP." HAR 11-55 Rationale, Appendix K, p. 65. Permittees are also required to develop measurable goals in order to gauge permit compliance and measure the effectiveness of each of the six minimum control measures. MS4 Permit Part 6(b).

25.   The Hawaii Small MS4 General Permit also states that "[t]he permittee shall not cause or contribute to a violation of the basic water quality criteria as specified in [Hawaii Revised Code] section 11-54-4." Hawaii Small MS4 General Permit

9

Part 7.  Hawaii Revised Code (HRC) 11-54-4 provides that "all waters shall be free of substances attributable to domestic, industrial, or other controllable sources of pollutants . . . ," and requires periodic inspections.

26.   Section 309 of the CWA authorizes EPA to commence a civil action for a permanent or temporary injunction when any person is in violation of the CWA or a permit, 33 U.S.C. § 1319(b), and provides that any person who violates the CWA or a permit shall be subject to a civil penalty not to exceed $32,500 per day for each violation occurring after March 15, 2004 through January 12, 2009, and not to exceed $37,500 per day for each violation occurring after January 12, 2009.  33 U.S.C. § 1319(d).

## GENERAL ALLEGATIONS

27.   Pursuant to 40 C.F.R. §122.32(a)(1), HDOT's Honolulu and Kalaeloa Barbers Point Harbors, including the pipes, roadways, and other storm water conveyances, constitute regulated small MS4s, which require NPDES permit authorization for discharges of pollutants in storm water.

28.   The Hawaii Small MS4 General Permit sets forth conditions for any discharger of storm water, including but not limited to, the development and implementation of a storm water management program (SWMP) as well as monitoring and reporting. The permit also prohibits non-storm water discharges.

10

29.   Storm water runoff from Honolulu Harbor and Kalaeloa Barbers Point Harbor discharges to the receiving waters known as Honolulu Harbor and Kalaeloa Barbers Point Harbor, respectively.

30.   Honolulu Harbor and Kalaeloa Barbers Point Harbor are both "navigable waters" within the meaning of the Section 502(7) of the CWA, 33 U.S.C. §1362(7) and "waters of the United States" as defined by the regulations at 40 C.F.R. § 122.2, and "State waters" as defined under HRS §342D-1 and Hawaii Administrative Rules (HAR) 11-54-1.

31.   Hawaii has established water quality standards for the waters of Honolulu Harbor and Kalaeloa Barbers Point Harbor, HAR Chapter 11-54.  Honolulu Harbor is impaired by pollutants and has been listed by the State of Hawaii pursuant to Section 303(d) of the CWA, 33 U.S.C. § 1313(d), for total nitrogen, total phosphorus, turbidity, nutrients, metals, and suspended solids, among others.

32.   EPA and DOH conducted inspections of the Honolulu Harbor and the Kalaeloa Barbers Point Harbor to determine compliance with the Hawaii Small MS4 General Permit in December 2008.

33.   As a result of the compliance review and inspections, on June 18, 2009, EPA issued an Administrative Order to HDOT for violations of the Hawaii Small MS4

General Permit (Docket No. CWA-309(a)-09-023)(Administrative Order).  The

Administrative Order requires HDOT to come into compliance with Hawaii's Small

MS4 General Permit through implementation of specified BMPs and submittal of

specified BMP programs.

### FIRST CLAIM FOR RELIEF

### MS4 VIOLATIONS

34.   The United States and DOH incorporate by reference the allegations

contained in paragraphs 1 through 33 of this complaint.

35.   HDOT's harbors at Honolulu and Kalaeloa Barbers Point are small MS4s

within the meaning of 40 C.F.R. § 122.26(b)(16).

36.   HDOT failed to comply with the Hawaii Small MS4 General Permit and

Sections 301(a) and 308 of the CWA, 33 U.S.C. §§ 1311(a) and 1308.  The Permit

required the submittal and implementation of a Storm Water Management Plan

containing various program components.  HDOT failed to timely develop and

implement many program components at Honolulu Harbor and at Kalaeloa Barbers

Point Harbor including, but not limited to, the following:

a.   HDOT failed to comply with Part 6(a)(3)(A) of the Hawaii Small MS4

General Permit in that it failed to implement an illicit discharge enforcement

program sufficient to reduce pollutants to the maximum extent practicable.  HDOT

relies primarily on its Tenant Revocable Permits and lease agreements to implement storm water quality requirements. HDOT has failed to establish procedures for the enforcement of the terms and conditions of the Tenant Revocable Permits and lease agreements;

b. HDOT failed to comply with Part 6(a)(3)(B) of the Hawaii Small MS4 General Permit in that it has failed to develop and implement procedures, including an outfall screening program, to detect and eliminate illicit discharges sufficient to reduce pollutants to the maximum extent practicable. HDOT relies largely on passive approaches such as training and outreach and it has not developed an effective method of actively identifying and eliminating illicit discharges;

c. HDOT failed to comply with Part 7(b) of the Hawaii Small MS4 General Permit in that it failed to timely inspect outfalls and receiving waters to detect violations, or conditions that may lead to violations, of basic water quality criteria in the harbors;

d. HDOT failed to comply with Part 6(a)(3)(C) of the Hawaii Small MS4 General Permit and 40 C.F.R. § 122.34(b)(3)(iii) in that it has failed to adequately compile a list of non-storm water discharges or flows considered significant contributors of pollutants to the harbors and to take measures to prevent these discharges;

13

e.  HDOT failed to comply with Parts 6(a)(4)(A)(B) and (C) of the Hawaii Small MS4 General Permit and 40 C.F.R. § 122.34(b)(4)(i), (ii)(A)(B) and (C) in that it has failed to establish rules or procedures to control the discharge of storm water from construction sites to the maximum extent practicable including requirements that construction site operators  implement sediment and erosion controls or control waste;

f.  HDOT failed to comply with Part 6(a)(4)(D) of the Hawaii Small MS4 General Permit and 40 C.F.R. § 122.34(b)(4)(ii)(D) in that it failed to establish mechanisms and procedures to review, and also failed to review, pre-construction site plans to incorporate consideration of potential water quality impacts;

g.  HDOT failed to comply with Part 6(a)(4)(F) of the Hawaii Small MS4 General Permit and 40 C.F.R. § 122.34(b)(4)(ii)(F) in that it failed to develop and implement an adequate site inspection and enforcement program for construction sites;

h.  HDOT failed comply with Part 6(a)(5)(A) of the Hawaii Small MS4 General Permit and 40 C.F.R. § 122.34(b)(5)(i) in that it failed to establish and implement rules, ordinances, or other regulatory mechanisms, including enforcement procedures and actions, that address post-construction runoff from new development and redevelopment projects disturbing at least one acre;

14

i.  HDOT failed to comply with Part 6(a)(5)(B) of the Hawaii Small MS4 General Permit and 40 C.F.R. § 122.34(b)(5)(ii)(A) in that it failed to develop and implement strategies that include a combination of structural or non-structural best management practices (BMPs) to minimize water quality impacts and maintain pre-development runoff conditions from new development and redevelopment construction sites of one acre or more sufficient to reduce pollutants to the maximum extent practicable;

j.  HDOT failed to comply with Part 6(a)(5)(C) of the Hawaii Small MS4 General Permit in that it failed to develop, implement and enforce procedures for the long term operation and maintenance of post-construction BMPs sufficient to reduce pollutants to the maximum extent practicable;

k. HDOT failed to comply with Part 6(b) of the Hawaii Small MS4 General Permit and 40 C.F.R. § 122.34(d)(1) in that it failed to develop measurable goals to gauge permit compliance and program effectiveness for each minimum control measure identified in the Small MS4 Permit.

37.   HDOT's violations of the Hawaii Small MS4 General Permit constitute violations of the CWA and Hawaii Water Pollution Law.  Each day of each violation is a separate violation of the CWA and Hawaii Water Pollution Law subject to civil penalties.  Unless restrained by an order of the Court, HDOT will

continue to violate the terms of the Hawaii Small MS4 General Permit and the CWA.

## SECOND CLAIM FOR RELIEF
## FAILURE TO COMPLY WITH EPA's 2009 ADMINISTRATIVE ORDER

38.   The United States incorporates by reference the allegations contained in paragraphs 1 through 33 of this complaint.

39.   On June 18, 2009, EPA issued an Administrative Order to HDOT that identified specific Hawaii Small MS4 General Permit violations at the Honolulu and Kalaeloa Barbers Point Harbors and required specific revisions to HDOT's SWMPs.  HDOT failed to comply with the Administrative Order as described below and is subject to penalties in accordance with Section 309(d) of the CWA, 33 U.S.C. § 1319(d):

a. The Administrative Order required HDOT to revise the Public Education and Outreach Program in the 2009 SWMPs to identify the Standard Industrial Classification (SIC) codes that best reflect the type of businesses operating at Honolulu and Kalaeloa Barbers Point Harbors. HDOT has failed to revise the 2009 SWMPs to include the required SIC codes.

b. The Administrative Order also required HDOT to conduct at least one inspection of all industrial and commercial tenant facilities at Honolulu and

Kalaeloa Barbers Point Harbors by January 1, 2010.  HDOT did not complete the initial tenant inspections as required by the Administrative Order.

c. The Administrative Order required HDOT to ensure that follow-up inspections at tenant facilities and construction sites at Honolulu and Kalaeloa Barbers Point Harbors occur within two weeks of the date that HDOT's initial inspection finds a failure by facility operator to control pollution discharges to the MS4 to the maximum extent practicable.  HDOT failed to comply with the Administrative Order in that the 2009 SWMPs only require follow-up inspection within 14 days of the initial inspection when "major environmental noncompliance" is observed and then only if the noncompliance poses an "imminent threat to environment and/or the public."

d. The Administrative Order required HDOT to include a requirement in an Enforcement Response Plan (ERP) to initiate, within two business days, investigation of complaints transmitted by HDOH regarding facilities within HDOT jurisdiction, and to determine if the facility is out of compliance with the storm water requirements in HDOT's tenant agreement. HDOT has failed to include such a provision in the ERP in violation of the Administrative Order.

e. The Administrative Order required HDOT to develop a field screening work plan to ensure field screening of all open channels and relevant underground

17

pipes and to respond within two days of discovery of an illicit discharge of a non-hazardous substance with an order to the identified the responsible party to immediately cease such discharges.  HDOT failed to comply with the Administrative Order in that the 2009 SWMPs do not address either requirement.

f. The Administrative Order required HDOT to conduct annual training of HDOT employees responsible for construction site inspections.  HDOT failed to comply with the Administrative order by not providing such annual training.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America and DOH, request that this Court:

1. Pursuant to Section 309(b) of the CWA, 33 U.S.C. •1319(b), and HRS §342D-11 issue an injunction requiring HDOT to achieve permanent and consistent compliance with the Clean Water Act and to comply with the Hawaii Small MS4 General Permit, Hawaii Administrative Rules Ch. 11-55, Appendix K.

2. Assess, pursuant to Section 309(d) of the CWA, 33 U.S.C. •1319(d), a civil penalty not to exceed $32,500 per day for each violation occurring on or before January 12, 2009, and up to $37,500 per day for each violation occurring after January 12, 2009, and assess, pursuant to HRS 342D-30 a civil penalty not to exceed $25,000 per day for each violation;

3. Award Plaintiffs their costs and disbursements in this action; and

4. Grant such other relief as the Court deems appropriate.

Respectfully submitted,

DATED: 8/30/14

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources
Division
U.S. Department of Justice

DATED: 9/5/14

JAMES A. LOFTON
Counsel to the Chief
Environmental Enforcement Section
Environment & Natural Resources
Division
U.S. Department of Justice
Washington, D.C. 20044
(202) 514-2445
jim.lofton@usdoj.gov

FLORENCE T. NAKAKUNI
United States Attorney
District of Hawaii
PJKK Federal Building
300 Ala Moana Boulevard, #6-100
Honolulu, Hawaii 96850

DATED: September 10, 2014

THOMAS A. HELPER
Assistant U.S. Attorney
District of Hawaii
PJKK Federal Building
300 Ala Moana Boulevard, #6-100
Honolulu, Hawaii 96850
808-440-9293
tom.helper@usdoj.gov


Of Counsel:
Ellen Blake
Office of Regional Counsel
EPA Region 9
75 Hawthorne Street
San Francisco, California

FOR THE HAWAI'I DEPARTMENT OF HEALTH


DATED: ___8/16/14___


_Edward S. Bohlen_
Edward G. Bohlen
Deputy Attorney General
Health and Human Services Division
Department of the Attorney General
465 South King St., Room 200
Honolulu, Hawai'i 96813
(808) 587-3050
Edward.G.Bohlen@hawaii.gov