IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI'I


UNITED STATES OF AMERICA, *et al.,*   )
                                       )
                  Plaintiffs,          )
                                       )
          v.                           )        Civil Action No. _____
                                       )
HAWAI'I DEPARTMENT OF                  )
TRANSPORTATION,                        )
                                       )
                  Defendant.           )
_____)


**CONSENT DECREE**

## TABLE OF CONTENTS

I.   GENERAL PROVISIONS ..................................................................................4

II.   DEFINITIONS...4

III.   COMPLIANCE WITH THE CLEAN WATER ACT ......................................9

IV.   APPROVAL PROCESS ..................................................................................9

V.   CERTIFICATION OF REPORTS AND SUBMISSIONS...........................11

VI.   INJUNCTIVE RELIEF .................................................................................11

VII.   CIVIL PENALTY .........................................................................................39

VIII.   STIPULATED PENALTIES .........................................................................39

IX.   FORCE MAJEURE .......................................................................................44

X.   DISPUTE RESOLUTION .............................................................................46

XI.   INFORMATION COLLECTION AND RETENTION ................................49

XII.   EFFECT OF SETTLEMENT........................................................................52

XIII.   MISCELLANEOUS .....................................................................................53

XIV.   NOTIFICATION ..........................................................................................53

XV.   MODIFICATION AND TERMINATION ...................................................55

XVI.   INTEGRATION ...........................................................................................56

XVII.   APPENDICES...............................................................................................56

XVIII.   ENTRY AND FINAL JUDGMENT ............................................................57

The United States of America, on behalf of the United States Environmental Protection Agency (EPA), and the Hawaii Department of Health (HDOH) have filed a Complaint in this matter alleging that the Hawaiʻi Department of Transportation (HDOT) has violated the Clean Water Act by failing to comply with the terms of the Hawaiʻi National Pollutant Discharge Elimination System (NPDES) General Permit Authorizing Discharges of Storm Water and Certain Non-Storm Water Discharges from Small Municipal Separate Storm Sewer Systems (Hawaiʻi Small MS4 General Permit) for municipal stormwater discharges at Honolulu and Kalaeloa Barbers Point Harbors. Hawaiʻi Administrative Rules 11-55, Appendix K. The United States further alleges that HDOT violated an administrative order issued by EPA in 2009 requiring the correction of violations and deficiencies in HDOT's stormwater management plans for the two harbors. Hawaiʻi Small MS4 General Permit and Sections 301(a) and 308 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1308.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, upon the pleadings, without adjudication or admission of any issue of fact or law, and upon consent and agreement of the Parties, it is hereby ADJUDGED, ORDERED, AND DECREED as follows:

## I. GENERAL PROVISIONS

1.    <u>Jurisdiction and Venue</u>. This Court has jurisdiction over the subject matter of this action and over the parties pursuant to 33 U.S.C. §§1319 & 1365 and pursuant to 28 U.S.C. §§ 1331, 1345, 1355 & 1367. The Complaint states claims upon which relief may be granted under 33 U.S.C. § 1319 and under applicable provisions of State law. Venue is proper in this District under 33 U.S.C. § 1319(b) and under 28 U.S.C. §§ 1391(b) and (c) & 1395(a), because the defendant may be found here and because the transactions and occurrences giving rise to the Complaint occurred here. For purposes of the Decree, HDOT consents to and will not contest the Court's exercise of personal jurisdiction over HDOT or venue in this District.

2.    <u>Parties Bound</u>. The obligations of this Consent Decree apply to and are binding upon the United States and HDOH and upon HDOT and any successor agencies or other entities or persons otherwise bound by law. Within 10 days of entry of this Decree, HDOT shall provide a copy of this Decree to each Manager and each person or firm retained by HDOT to implement this Decree. If, more than 10 days after entry of this Decree, a Manager or other person or firm becomes an employee of HDOT or is retained by HDOT to implement provisions of this Decree, HDOT shall provide such person or firm a copy of the Decree within 10 days of such employment or retention.

## II. DEFINITIONS

3.    Except as specifically provided in this Decree, definitions for the terms used in this Decree shall be incorporated from the Clean Water Act and the regulations

promulgated pursuant to the Act. Whenever terms listed below are used in this Decree, the following definitions apply:

"Annual Compliance Report" or "ACR" shall mean the Annual Reporting Requirements set forth in Hawai'i Administrative Rules 11-55, Appendix K § 9 and Paragraph 13 of this Consent Decree.

"BMPs" or "Best Management Practices" shall refer to those methods that are the most effective, practical means of preventing or reducing pollution from stormwater runoff. These include schedules of activities, prohibitions of practices, maintenance procedures, and other management practices to prevent or reduce the discharge of pollutants to waters of the United States.

"Clean Water Act" or "Act" shall mean the Federal Water Pollution Control Act, as amended, 33 U.S.C. §§ 1251-1387.

"Contractor" shall mean the contractor or contractors procured by HDOT in order to provide various services in support of the requirements of this Consent Decree.

"Construction Project" or "Construction Site" shall mean any location owned, leased or operated by HDOT-Harbors, and at which there is or will be construction resulting in ground-disturbing activities greater than or equal to one acre or that is otherwise subject to the NPDES stormwater construction regulations set forth at 40 C.F.R. § 122.26(b)(14)(x) and (b)(15).

"Cut Sheets" shall mean BMP specifications that contain information needed to install or use the BMP.

"Day" shall mean a calendar day.

'EPA' shall mean the United States Environmental Protection Agency and any of its successor departments, agencies, or instrumentalities.

'Geographic Information System' or 'GIS' shall mean: any information system that integrates, stores, edits, analyzes, shares, and displays geographic information for informing decision making. GIS applications are tools that allow users to create interactive queries (user-created searches), analyze spatial information, edit data in maps, and present the results of all these operations.

'Harbor' shall mean the receiving waters known as Honolulu Harbor and Kalaeloa Barbers Point Harbor.

'Harbor Property' shall mean any real property owned, leased or operated by HDOT-Harbors.

'Hawai'i Small MS4 General Permit' shall mean the Hawai'i National Pollutant Discharge Elimination System (NPDES) General Permit Authorizing Discharges of Storm Water and Certain Non-Storm Water Discharges from Small Municipal Separate Storm Sewer Systems for municipal stormwater discharges. Hawai'i Administrative Rules 11-55, Appendix K.

'HDOH' shall mean the Hawai'i Department of Health and any of its successor departments, agencies, or instrumentalities.

'HDOT' shall mean the Hawai'i Department of Transportation, including all of its divisions.

'HDOT-Harbors' shall mean the Harbors Division of HDOT.

'Illicit Discharge' shall mean any discharge to a municipal separate storm sewer that is not comprised entirely of storm water except discharges pursuant to a NPDES

permit (other than the NPDES permit for discharges from the municipal separate storm sewer) and discharges resulting from fire fighting activities. 40 C.F.R. § 122.26(b)(2).

'Industrial General Storm Water Permit' shall mean the Hawai'i National Pollutant Discharge Elimination System (NPDES) General Permit Authorizing Discharges Associated with Industrial Activity. Hawai'i Administrative Rules 11-55, Appendix B.

'MS4' shall mean the small municipal separate storm sewer systems owned and operated by HDOT at Honolulu and Kalaeloa Barbers Point Harbors.

'New Development' shall mean new construction or installation of a building or structure or the creation of impervious surfaces that disturb greater than or equal to one acre, or less than one acre if it is part of a larger common plan of development or sale that would disturb one acre or more.

'Notice to Proceed' shall mean the written notice to commence the activity for which the contract was awarded.

'Outfall' shall mean a "point source" as defined by 40 C.F.R. § 122.2 at the point where a municipal separate storm sewer discharges to waters of the United States and does not include open conveyances connecting to municipal separate storm sewers, or pipes, tunnels or other conveyances which connect segments of the same stream or other waters of the Unites States and are used to convey waters of the United States. 40 C.F.R. § 122.26(b)(9).

'Parties' means the United States, on behalf of EPA; the State, on behalf of HDOH; and HDOT.

'Redevelopment' shall mean development that would create or add impervious surface area on an already developed site. Redevelopment also includes, but is not limited

to any construction project that requires demolition or complete removal of existing structures or impervious surfaces at a site and replacement with new impervious surfaces. Maintenance activities such as top-layer grinding, repaving (where all pavement is not removed), and reroofing are not considered to be redevelopment. Interior remodeling projects and improvements are also not considered to be redevelopment.

'Responsible Officer' shall mean an official of HDOT in charge of stormwater program functions for either HDOT-Harbors, or any other person who performs similar policy or decision making functions for HDOT and is authorized as set forth at 40 C.F.R. § 122.22.

'Source Control' shall mean measures to prevent pollutants from coming into contact with stormwater runoff or preventing polluted runoff from discharging into small MS4.

'Standard Operating Procedure' shall mean detailed, written instructions to achieve uniformity of the performance of a specific function as detailed in the SWMP.

'State' shall mean the State of Hawai'i.

'SWMP' shall mean a Stormwater Management Plan developed and implemented as required by the Hawai'i Small MS4 General Permit and modified as required by this Consent Decree.

'Tenant' shall mean a person, group, partnership, corporation, or any other entity that has an executed lease, revocable permit or disposition instrument under chapter 171, Hawai'i Revised Statutes to use or occupy land, a building, structure or other property owned by HDOT-Harbors. This term includes HDOT-Harbor's approved sub-tenants and entities using container or terminal facilities.

'Tenant Activities' shall mean recurring activities conducted by Tenants including but not limited to fish cleaning; equipment, vessel or vehicle cleaning; or equipment, vessel or vehicle maintenance.

'Treatment Control' shall mean measures that treat stormwater and non-stormwater that has come into contact with pollutants.

'Vessel' shall mean any watercraft or other contrivance used as a means of transportation on water.

'Vessel Operator' shall mean the owner or operator of any Vessel within or on Harbors or any property owned or operated by HDOT-Harbors.

'Year' shall mean a calendar year.

### III. COMPLIANCE WITH THE CLEAN WATER ACT

4.      HDOT shall fully comply with all requirements of the Clean Water Act, as well as with the terms and conditions of all applicable NPDES Permits, including the Hawaiʻi Small MS4 General Permit.

5.      HDOT-Harbors shall develop, and submit for approval prior to the entry of the Consent Decree, a pollution prevention plan for the stockpiles at Kalaeloa Barber's Point Harbor which shall include: (i) BMP measures to temporarily stabilize the stockpiles located at the Kalaeloa Barber's Point Harbor, (ii) a final stabilization plan which shall include a schedule with annual milestones. HDOT shall implement the plan no later than entry of the Consent Decree.

### IV. APPROVAL PROCESS

6.     Approval of Deliverables. After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, EPA, after a reasonable opportunity for review and comment by HDOH, shall in writing, within a reasonable amount of time:  (i) approve the submission; (ii) approve the submission upon specified conditions; (iii) approve part of the submission and disapprove the remainder; or (iv) disapprove the submission.

a.     If the submission is approved pursuant to Subparagraph (i) above, HDOT shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part, pursuant to Subparagraph (ii) or (iii), HDOT shall, upon written direction of EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions or conditions placed on conditionally approved portions, subject to HDOTs right to dispute only the specified conditions or the disapproved portions under Section X of this Decree (Dispute Resolution).

b.     If the submission is disapproved in whole or in part pursuant to Subparagraph (iii) or (iv), HDOT shall, within 30 days or such other time as agreed to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Subparagraph. If the resubmission is approved in whole or in part, HDOT shall proceed in accordance with the preceding Subparagraph.

7.     Any Stipulated Penalties applicable to the original submission, as provided in Section VIII of this Decree, shall accrue during the 30-day period or other period

specified for resubmission, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of HDOT's obligations under this Decree, the Stipulated Penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

8.      If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA, after a reasonable opportunity for review and comment by HDOH, may again require HDOT to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies, subject to HDOT's right to invoke Dispute Resolution and to the right of EPA and HDOH to seek Stipulated Penalties as provided in the preceding Paragraphs.

## V. CERTIFICATION OF REPORTS AND SUBMISSIONS

9.      Except as otherwise expressly provided in this Consent Decree, any report or other document submitted by HDOT pursuant to this Decree that makes any representation concerning compliance or noncompliance with any requirement of this Decree, the Act or its implementing regulations, or any applicable permit, shall be certified by a Responsible Officer of HDOT. The certification shall be in the following form:

> I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gather and present the information contained therein. I further certify, based on my personal knowledge or on my inquiry of those individuals immediately responsible for obtaining the information, that the information is true, accurate and complete. I am aware that there are significant penalties for submitting

11

false information, including the possibility of fines and imprisonment for knowingly and willfully submitting a materially false statement.

## VI. INJUNCTIVE RELIEF

10.    HDOT Organization Structure

      a.    The HDOT Director shall maintain direct oversight of all staff located in the Office of Environmental Compliance, including Environmental Compliance Program staff. The Environmental Compliance staff coordinates with Highways, Airports, and Harbors Divisions to achieve and maintain compliance with all environmental regulations and permits.

      b.    Within 180 days of entry of the Consent Decree, HDOT shall reorganize the current Office of Special Compliance as an Office of Environmental Compliance and include a central point position managing the office under the direct supervision of the HDOT Director. Once established, the new manager shall report directly to the HDOT Director. The manager shall have the responsibility and authority to ensure HDOT complies with all federal, state, and local environmental regulations and permits, relating to MS4 compliance. HDOT shall use its best efforts to hire a Manager for the new Office of Environmental Compliance within 180 days of entry of the Consent Decree. If the position is not filled within 180 days, HDOT will engage a compliance management consultant until the position is filled.

      c.    HDOT shall ensure that applicable HDOT Office of Environmental Compliance staff have the authority and responsibility to oversee compliance with all environmental requirements, relating to MS4 compliance, including the stormwater permits and stormwater management plans for the Highways, Airports, and Harbors

Divisions. HDOT shall ensure that HDOT Office of Environmental Compliance staff have the training and professional qualifications, sufficient to assess compliance, to identify actual or potential non-compliance, and to identify and require implementation of remedies.

          d.     The HDOT Office of Environmental Compliance staff shall perform audits of each operational division of HDOT in accordance with Appendix A.

11.    Stormwater Management Plan (SWMP)

          a.     Modification of Stormwater Management Plan Elements

           i.     HDOT-Harbors shall modify the 2009 SWMPs for Honolulu Harbor and Kalaeloa Barbers Point Harbor to integrate changes described below. The modified SWMPs shall be provided to EPA and HDOH no later than 90 days of entry of the Consent Decree. HDOT-Harbors may choose to develop one SWMP for both Harbors.

           ii.     Within 90 days of entry of the Consent Decree, HDOT-Harbors shall post the SWMPs on HDOT-Harbors' stormwater management website. HDOT-Harbors shall solicit comments from Tenants and the public, through a variety of mechanisms. HDOT-Harbors shall provide a schedule for receipt of comments, not to exceed 45 days. Among other mechanisms, HDOT-Harbors shall solicit comments on the SWMP by publishing notices regarding its availability for review and comment in one local newspaper. HDOT-Harbors shall continue to maintain records of comments received as described in SWMP Section 3.2.

12.     Implementation Timeline. HDOT-Harbors shall implement the modified SWMP no later than the close of the public comment period as described in Paragraph 11.a.ii. above.

13.     Annual Compliance Report. HDOT-Harbors shall modify the Annual Compliance Report (ACR) format to include a qualitative SWMP implementation assessment, by the first ACR due after entry of the Consent Decree.

a.      The qualitative assessment shall discuss whether implementation timelines have been met, whether metrics tracked by HDOT-Harbors are effective in measuring specific activities, and whether specific activities have been effective in reducing the discharge of pollutants from the MS4. Where available, the assessment shall include a discussion of water quality monitoring data. Where monitoring data is not available, HDOT-Harbors shall evaluate the need for water quality monitoring in determining SWMP effectiveness.

b.      The assessment shall include a budget broken down by major components of the SWMP.

c.      The ACR shall include a discussion of changes to the SWMP to incorporate new activities, modify existing activities, or reflect changes to the MS4.

14.     Education, Participation, and Outreach. In addition to continuing to implement SWMP Section 2.0 and 3.0, HDOT-Harbors shall implement the following changes to the Public Education, Participation, and Outreach measures.

a.      Improved Awareness Message/Program Branding and Integration

i.      By the entry of the Consent Decree, HDOT-Harbors shall develop, integrate, and promote a message that conveys the need for and importance of stormwater

14

awareness. The awareness message shall be prominently displayed in all printed and electronic communication with Tenants and during all staff, Tenant, or public training. The stormwater awareness message shall be described in the modified SWMP.

ii.    In addition to SWMP Section 2.2, by the entry of the Consent Decree, HDOT-Harbors shall identify and implement no less than three forms of disseminating stormwater awareness information to Tenants and the public, including but not limited to workshops, public presentations, brochures, trade shows, expos, advertisements through various media (e.g., radio, television, newspapers, social media, etc.), volunteer opportunities, or multi-agency events (e.g., City and County of Honolulu Earth Month or Make a Difference Month). The forms of disseminating stormwater awareness information and anticipated schedules shall be described in the modified SWMP.

1)  HDOT-Harbors shall continue to hold "Tenant Stormwater Pollution Prevention Awareness Training" as described in the 2011 ACR. HDOT-Harbors shall track whether or not Tenants attend and shall use its best effort to ensure that at least 80% of Tenants attend this training. Failure to attend training will impact a Tenant's risk ranking in accordance with the Tenant Inspection Program Manual, attached as Appendix B.

iii.    At least once per calendar year, beginning in 2014, HDOT-Harbors shall place an advertisement in one local newspaper describing HDOT-Harbors' efforts to protect and improve stormwater quality, its efforts to work with other agencies, volunteers, and community organizations regarding stormwater awareness, and contact numbers for the public to report stormwater problems. The advertisement shall

prominently display HDOT-Harbors' stormwater awareness message. The advertisement and anticipated schedule for placement shall be described in the modified SWMP.

      b.    Enhanced Stormwater Management Website

      i.    HDOT-Harbors shall update and maintain its stormwater management website to include, but not be limited to: 1) links to its National Pollutant Discharge Elimination System permits and this Consent Decree; 2) the amended SWMP; 3) contact information for public comments on the SWMP; 4) ACRs; 5) Staff, Tenant stormwater training materials; 6) inspection forms and risk ranking criteria; 7) vehicle and equipment wash applications; 8) BMP fliers and other BMP resources appropriate for various types of Tenants, including minimum BMPs; 9) spill prevention control and countermeasures guidance; 10) contacts for reporting stormwater violations to HDOT-Harbors, HDOH, and EPA; 11) Tenant Environmental Manager of the Year award; and 12) EPA's and the City and County of Honolulu's stormwater websites. The stormwater management website shall prominently display and integrate HDOT-Harbors' stormwater awareness message.

      ii.    HDOT may choose to develop one website that covers stormwater information for all Divisions. If HDOT chooses to maintain separate websites for each Division, the websites must link to each other.

      iii.    HDOT-Harbors shall ensure the stormwater management website is easily accessible by the public, including, but not limited to, a prominent link on HDOT's homepage. HDOT-Harbors shall provide for a mechanism to track the number of visitors to the webpage and report this information in the ACR.

c.      Signage and Inlet Stenciling

i.      By entry of the Consent Decree, HDOT-Harbors shall identify no less than 50 locations on Harbor Property that are suitable for the placement of signs that advise against dumping or discarding pollutants where they may enter either Harbor or HDOT-Harbors' MS4. Suitable areas shall include, but not be limited to: 1) visible public locations, such as harbor entrances, comfort stations, meeting areas, and garbage collection stations; 2) high traffic Tenant areas or areas with a history of illicit discharges; and 3) locations at wharfs and piers. The signs shall include a prohibition against dumping or discarding pollutants, information about illicit discharges, the HDOT-Harbors stormwater awareness message, and the stormwater hotline for reporting stormwater problems. HDOT-Harbors shall install the signs no later than 90 days after the entry of the Consent Decree. On an annual basis, HDOT-Harbors shall evaluate the need for additional signs, taking into account changing Tenant use patterns at the Harbors, and report this information in the ACR.

ii.      Within 90 days after the entry of the Consent Decree, HDOT-Harbors shall stencil all storm drain inlets on Harbor Property. HDOT-Harbors may elect to recruit volunteers and Tenants to assist with the stenciling effort. HDOT-Harbors shall consider the use of medallions or permanent storm drain inlet markers. HDOT-Harbors shall inspect the legibility of the stencil or label nearest each inlet prior to the wet season every year, record all inlets with illegible stencils, and re-stencil or re-label the inlet 60 days after inspection.

d. Minimum Best Management Practice Guidance

i. By entry of the Consent Decree, HDOT-Harbors shall develop a comprehensive set of information sheets, describing minimum BMPs for common Tenant activities. The list of minimum BMPs shall be included in the modified SWMP.

ii. HDOT-Harbors shall update Tenant lease agreements upon renewal, Tenant revocable permits, or other materials given to Tenants, to reference or include the minimum BMPs and require their implementation and maintenance.

iii. By entry of the Consent Decree, HDOT-Harbors shall develop information sheets describing recommended BMPs for Vessel Operators. The BMPs shall be available on the stormwater management website or printed as fliers or brochures. The list of recommended BMPs for Vessel Operators shall be included in the modified SWMP.

e. Enhanced Tenant Inventory

i. HDOT-Harbors shall maintain an electronic inventory of Tenants as described in the Tenant Inspection Manual. Among other items, this inventory includes a contact for each Tenant, location information, a description of the nature of business activity, and whether the Tenant maintains coverage under the Industrial General Stormwater Permit (Industrial General Permit) issued by HDOH. This inventory shall be continually updated based and be compatible with GIS or other mapping system (see Paragraph 20.a).

f. Tenant Survey

i. At least once per calendar year, beginning in 2014, HDOT-Harbors shall provide a questionnaire to all Tenants to assess their knowledge regarding

stormwater awareness and pollution prevention. The questionnaire shall be included in the modified SWMP.

      ii.   The results of the questionnaire shall be used to update Tenant training materials. HDOT-Harbors shall use its best efforts to ensure no less than 60% of all Tenants respond to the survey. The results of the annual survey shall be included in the ACRs.

      g.    Educational Materials for Tenants

      i.   At least twice per calendar year, beginning in 2014, HDOT-Harbors shall provide educational materials to all Tenants to educate them on stormwater awareness issues and the terms and conditions of their lease or revocable permit, Tariff and/or Wharfage provisions related to stormwater management. Among others, HDOT-Harbors may use the following methods: 1) include a brochure or educational fact sheet with an invitation to the Annual Tenant Training; 2) hand out brochures at the Annual Tenant Training; 3) hand out brochures or educational materials during inspections. The materials shall include: 1) a brief description of responsibilities of the Harbor Tenants regarding stormwater pollution prevention; 2) a fact sheet and/or brochures describing HDOT-Harbors endorsed minimum BMPs; 3) where applicable, a description of where lease or revocable permit obligations relating to stormwater management can be found; 4) the purpose, scope, and potential ramifications of HDOT-Harbors recurring inspections and the availability of the Tenant Inspection Manual for Tenant review; 5) a concise and readily understandable definition of illicit discharges as well as procedures for reporting illicit discharges via the HDOT-Harbors stormwater hotline; and 6) resources for

obtaining additional information regarding stormwater pollution prevention, such as a link to HDOT-Harbors' stormwater website.

  h.  New Tenant Awareness Package and Site Visit

    i.  By entry of the Consent Decree, HDOT-Harbors shall develop a New Tenant Information Package to ensure that new Tenants are aware of the stormwater requirements in the Tenant lease agreements and Tenant revocable permits, apply required BMPs based on activities at the site, and understand how to identify and report illicit discharges. The New Tenant Information Package should include educational materials describing the responsibilities of the Tenant and resources for obtaining additional information regarding stormwater pollution, including the stormwater awareness message and information on minimum BMPs.

    ii.  As of entry of the Consent Decree HDOT-Harbors shall begin to conduct inspections of new Tenants as described in the Tenant Inspection Manual. An Inspection shall be completed within three months of the Tenant occupying an existing facility, or the Tenant's completion, construction, and occupancy of a newly constructed facility.

15.  Employee Training

  a.  Employee Survey and Awareness Training

    i.  At least once per calendar year, beginning by the entry of the Consent Decree, HDOT-Harbors shall survey all HDOT-Harbors' employees to assess their knowledge regarding stormwater awareness and pollution prevention. The results of the survey shall be used to update employee training materials. Each year HDOT-Harbors

shall ensure no less than 80% of employees respond to the survey. The results of the annual survey shall be included in the ACR.

    ii.    Beginning by the entry of the Consent Decree, at least once per calendar year, HDOT-Harbors shall provide information to all HDOT-Harbors' employees about its stormwater pollution prevention program. The information can be in the form of posters, mailings, group email, or workshops. The information shall include: 1) an explanation of HDOT-Harbors' organizational structure including the responsibilities of Harbor employees regarding stormwater pollution prevention; 2) HDOT-Harbors' endorsed minimum BMPs; and 3) a concise and readily understandable definition of illicit discharges, as well as procedures for reporting illicit discharges via the HDOT-Harbors stormwater hotline.

    b.    Illicit Discharge Detection and Elimination Program Training

    i.    HDOT-Harbors will conduct Illicit Discharge Detection and Elimination Program Training in accordance with the Tenant Inspection Program and Outfall Reconnaissance Inventory and Inspection Program (ORIIP) Manuals, as attached as Appendices B and C. HDOT-Harbors will also conduct annual training of Marine Cargo Specialists and Grounds Supervisors on Illicit Discharge Detection and Elimination procedures.

    ii.    For staff whose job duties include implementing the Tenant Inspection Program, the training shall include the following, as described in the Tenant Inspection Manual, attached as Appendix B: 1) HDOT-Harbors' risk ranking procedures; 2) the purpose, implementation, and maintenance of BMPs; and 3) inspection procedures.

HDOT-Harbors shall also ensure that all inspectors understand and are proficient in applying HDOT-Harbors' Enforcement Response Plan (see Paragraph 19).

        iii.    For all staff whose primary job duties are related to implementing the ORIIP, the training shall include the following, as described in the ORIIP Manual attached as Appendix C: 1) procedures to be used when observing outfalls; 2) procedures to be used to track non-stormwater discharges to their source; and 3) HDOT-Harbors' illicit discharge definition. HDOT-Harbors shall also ensure that all applicable staff understand and are proficient in applying HDOT-Harbors' Enforcement Response Plan (se Paragraph 19).

        c.    Construction Site Runoff Control Program Training

        i.    For three years after entry of the Consent Decree, HDOT-Harbors shall ensure that all staff and consultants whose primary job duties are related to implementing the Construction Site Runoff Control Program have received specialized training from a consultant approved by EPA and HDOH, in accordance with Paragraph 6. HDOT-Harbors shall submit the name(s) and qualifications within 30 days of entry of this Consent Decree. After this time period, training shall be as described in the Construction Site Runoff Control Program Manual attached as Appendix E. At a minimum, HDOT-Harbors shall ensure: 1) staff tasked with plan review and permitting are proficient in HDOT-Harbors' adopted Construction BMP Manual and Hawai'i's Construction General Permit Stormwater Pollution Control Plan requirements; and 2) staff tasked with inspections are proficient in inspection procedures developed by HDOH and EPA, HDOT-Harbors' adopted Construction BMPs Manual, and the Construction General Permit Stormwater Pollution Control Plan requirements. HDOT-

Harbors shall ensure all applicable staff understand and are proficient in applying HDOT-Harbors' Enforcement Response Plan.

        d.      Post-Construction Stormwater Management Program Training

           i.     For three years after entry of the Consent Decree, HDOT-Harbors shall ensure that all staff whose primary job duties are related to implementing the Post-Construction Stormwater Management Program have received specialized training from a consultant approved by EPA and HDOH, in accordance with Paragraph 6. HDOT-Harbors shall submit the name(s) and qualifications within 30 days of entry. After this time period, training shall be as described in the Post Construction Management Program Manual attached as Appendix F. At a minimum, HDOT-Harbors shall ensure: 1) staff tasked with plan review and permitting are proficient in HDOT-Harbors' Post-Construction Technical Standards and the use of the Permanent Post-Construction BMP Checklist; 2) staff tasked with inspections are proficient in inspection procedures developed by HDOH and EPA and HDOT-Harbors' Post-Construction Technical Standards; and 3) all relevant staff understand and are proficient in applying HDOT-Harbors' Enforcement Response Plan.

16.    Illicit Discharge Detection and Elimination. In addition to continuing to implement SWMP Section 4.0, HDOT-Harbors shall implement the following changes to the Illicit Discharge Detection and Elimination program.

        a.      Improved Definition of Illicit Discharges. By entry of the Consent Decree, HDOT-Harbors shall develop and promote a list and description or examples of illicit discharges that are considered to be significant contributors of pollutants. The list and description of illicit discharges shall be capable of being used in education and

outreach activities. As part of the list, HDOT-Harbors shall clearly denote all conditionally authorized discharges to the storm sewer system, as well as describe or give examples of discharges that are prohibited. This definition shall be included in the modified SWMP.

      b.     Site Assessments

        i.  In addition to the Tenant inspections discussed in Paragraph 16.e below, HDOT-Harbors shall conduct site assessments of high-risk areas in accordance with the Tenant Inspection Program and ORIIP Manual, attached as Appendices B and C. The site assessments are intended to: 1) identify active or recent illicit discharges; and 2) increase the field presence of HDOT-Harbors personnel, and thus deter illicit discharges. The site assessments shall begin within 30 days after entry of the Consent Decree.

        ii.  HDOT-Harbors shall provide outreach activities during site assessments that include, but are not limited to, providing BMP fliers and other materials and a schedule of upcoming trainings and other outreach activities. HDOT-Harbors shall also identify areas that would benefit from signs.

        iii.  HDOT-Harbors shall respond to violations identified during site assessments and initiate enforcement in accordance with the Enforcement Response Plan.

      c.     Outfall Inspections

        i.  HDOT-Harbors shall implement the ORIIP, which shall accomplish the following goals: 1) identify illicit discharges, 2) assess Best Management Practice performance, and 3) assess system integrity. Any changes to the ORIIP shall be reported in the ACR.

    1)    The ORIIP shall include a prioritization schedule for dry weather inspections. As defined in the ORIIP, HDOT-Harbors shall rank all known outfalls as Potential, Suspect, Obvious, or Unlikely and at a minimum, all outfalls shall be inspected every two years, however, outfalls characterized as Potential, Suspect or Obvious inspected annually. HDOT-Harbors shall re-prioritize all outfalls on an annual basis. The prioritization schedule shall be included in the ACR. All outfall inspections shall be conducted in accordance with the procedures described in the ORIIP.

    2)    The wet weather inspections shall be conducted in accordance with the procedures described in the ORIIP.

    ii.  HDOT-Harbors shall create and maintain records of all dry and wet weather observations and investigations in accordance with the Tenant Inspection Program Manual, ORIIP, and the Enforcement Response Plan.

    d.    Illicit Discharge Tracking and Elimination. Upon observing a non-stormwater flow, HDOT-Harbors shall conduct Source Identification in accordance with the ORIIP. If the flow is illicit and originates within HDOT-Harbors' property or HDOT property, HDOT-Harbors shall ensure the connection is disconnected or flow from the source is discontinued in accordance with the Enforcement Response Plan. If the flow originates outside of HDOT-Harbors' or HDOT's property, HDOT-Harbors will notify the adjoining jurisdiction or property owner in writing that the flow is entering HDOT-Harbors' MS4 and copy HDOH on the letter or email.

    e.    Tenant Inspections

    i.   HDOT-Harbors shall implement the Tenant Inspection Program Manual, attached as Appendix B. As described in the Tenant Inspection Manual, the risk

ranking system shall be re-evaluated each calendar year based on information gathered during inspections, outreach, and through the Tenant survey and training process. Any changes to the Tenant Inspection Manual shall be reported in the ACR.

      ii.    By the entry of the Consent Decree, HDOT-Harbors shall inspect and conduct outreach at all Tenant facilities at a minimum of twice per year for high-risk Tenants and once per year for medium-risk Tenants, once every five years with annual reconnaissance for low-risk Tenants, as described in the Tenant Inspection Manual. HDOT-Harbors shall conduct any needed enforcement in accordance with the Enforcement Response Plan.

      1)   During inspections, HDOT-Harbors shall provide outreach activities that include, but are not limited to, providing BMP fliers and other materials for posting in common areas and a schedule of upcoming training and other outreach activities.

      iii.   If a reconnaissance inspection identifies a substantive change to a facility's operation, size or activities, HDOT-Harbors shall conduct an inspection within 30 days of the reconnaissance inspection to determine if the facility's risk ranking needs to change.

17.    Construction Site Runoff Control. HDOT-Harbors shall implement the Construction Site Runoff Control Program Manual. The Construction Site Runoff Control Program Manual, shall include the following elements: 1) Plan Review Procedures, including use of a Construction Design Review Checklist, which includes a check whether a Notice of Intent to be covered under Hawaii's Construction General Permit has been filed, if applicable, 2) BMP Standards and Technical Specifications as

described in Paragraph 17.a below, and 3) inspections and follow-up enforcement as described in Paragraph 17.b below.

    a.    HDOT-Harbors shall require the use of the *City and County of Honolulu Storm Water BMP Manual—Construction* for all Construction Sites and for paving projects per Tables 1 through 3 below.

    i.    The *City and County of Honolulu Storm Water BMP Manual—Construction* shall be available to the public and shall be clearly referenced within HDOT-Harbors' stormwater management website, along with the Construction Plan Review Checklist, in construction specifications, and in the permit applications for connection and/or discharge.

    ii.    HDOT-Harbors shall require that all Construction Sites on Harbor Property comply with the *City and County of Honolulu Storm Water BMP Manual—Construction.*

### Table 1. Minimum Set of Best Management Practices for All Construction Sites

| | |
|---|---|
| Erosion Controls | Scheduling |
| | Preservation of Existing Vegetation |
| | Slope Protection |
| | Run-on Diversion |
| Sediment Controls | Silt Fence |
| | Storm Drain Inlet Protection |
| | Sand Bag Barrier |
| | Stabilized Construction Site Entrance/Exit |
| Non-Stormwater Management | Water Conservation Practices |
| | Dewatering Operations |
| Waste Management | Material Delivery and Storage |
| | Stockpile Management |
| | Spill Prevention and Control |
| | Solid Waste Management |
| | Concrete Waste Management |
| | Sanitary/Septic Waste Management |

**Table 2. Additional Best Management Practices Applicable to Construction Sites Disturbing 1 Acre or More**

| | |
|---|---|
| Erosion Controls | Hydraulic Mulch |
| | Hydroseeding |
| | Soil Binders |
| | Geotextiles and Mats |
| | Wood Mulching |
| | Slope Drains |
| Sediment Controls | Silt Fence |
| | Fiber Rolls |
| | Sediment Basin |
| | Gravel Bag Berm |
| | Street Sweeping and/ or Vacuum |
| | Sand Bag Barrier |
| | Storm Drain Inlet Protection |
| | Scheduling |
| | Check Dam |
| Additional Controls | Wind Erosion Controls |
| | Stabilized Construction Entrance/ Exit |
| | Stabilized Construction Roadway |
| | Entrance/ Exit Tire Wash |
| | Advanced Treatment Systems |
| Non-Stormwater Management | Water Conservation Practices |
| | Dewatering Operations (see HAR 11-55 Appendix G) |
| | Vehicle and Equipment Washing |
| | Vehicle and Equipment Fueling |
| | Vehicle and Equipment Maintenance |
| Waste Management | Material Delivery and Storage |
| | Stockpile Management |
| | Spill Prevention and Control |
| | Solid Waste Management |

**Table 3. Minimum Required Best Management Practices for Roadway Paving or Repair Operation**

| | |
|---|---|
| 1. | Restrict paving and repaving activity to exclude periods of rainfall or predicted rainfall unless required by emergency conditions. |
| 2. | Install gravel bags and filter fabric or other equivalent inlet protection at all susceptible storm drain inlets and at manholes to prevent spills of paving products and tack coat. |
| 3. | Prevent the discharge of release agents including soybean oil, other oils, or diesel to the stormwater drainage system or receiving waters. |

| 4. | Minimize non-stormwater runoff from water use for the roller and for evaporative cooling of the asphalt. |
|---|---|
| 5. | Clean equipment over absorbent pads, drip pans, plastic sheeting or other material to capture all spillage and dispose of properly. |
| 6. | Collect liquid waste in a container, with a secure lid, for transport to a maintenance facility to be reused, recycled or disposed of properly. |
| 7. | Collect solid waste by vacuuming or sweeping and securing in an appropriate container for transport to a maintenance facility to be reused, recycled or disposed of properly. |
| 8. | Cover the "cold-mix" asphalt (i.e., pre-mixed aggregate and asphalt binder) with protective sheeting during a rainstorm. |
| 9. | Cover loads with tarp before haul-off to a storage site, and do not overload trucks. |
| 10. | Minimize airborne dust by using water spray or other approved dust suppressant during grinding. |
| 11. | Avoid stockpiling soil, sand, sediment, asphalt material and asphalt grinding materials or rubble in or near stormwater drainage system or receiving waters. |
| 12. | Protect stockpiles with a cover or sediment barriers during a rain. |

b.      Construction Site Inspections

i.      As described in the Construction Site Runoff Control Program Manual, HDOT-Harbors shall develop and maintain an electronic database for all active Construction Sites to track inspections and enforcement actions. This database shall be compatible with the Asset Management System. See Paragraph 20.b.

ii.      By the entry of the Consent Decree, HDOT-Harbors shall temporarily assign one full-time position whose duties will include inspection erosion and sediment control. HDOT-Harbors shall continue this temporary assignment until a full-time position is established and filled.

iii.      By December 31, 2015, HDOT-Harbors shall proceed to reorganize the engineering environmental unit, and request legislative and Governor approval to fund and establish a permanent full-time position. The section's functional statement and duties will require the positions to have the additional responsibilities to

inspect erosion and sediment control and shall include routine and event-driven inspections of Construction Projects for compliance with stormwater-related requirements. HDOT-Harbors will also supplement resources and technical expertise through the use of professional consultant services.

      iv.    As described in the Construction Site Runoff Control Program Manual: 1) the position designated to inspect erosion and sediment control shall meet with the HDOT-Harbors Project Engineer(s) and general contractor prior to any land disturbance activities on HDOT-Harbors' property to review BMPs required for the Construction Project and 2) HDOT-Harbors shall inspect every Construction Site at least once every two weeks between October and March and bimonthly between April and September. Each inspection shall be reported in the ACR and shall include the referenced Construction Site, and the stage of the project and the dates of inspections.

      v.    HDOT-Harbors shall undertake enforcement actions in accordance with the Enforcement Response Plan.

18.    Post-Construction Stormwater Management Program. In addition to continuing to implement SWMP Section 6.0, HDOT-Harbors shall implement the following changes to the Post-Construction Stormwater Management Program.

      a.    Retrofits of Recently Completed Projects

i.   By 180 days after the entry of the Consent Decree, HDOT-Harbors shall create an inventory of New Development and Redevelopment Projects that have been constructed or for which grading or land disturbance permits have been issued since May 19, 2003.

ii.   The inventory shall identify the project name, project identifier, location, total acreage, size of impervious area, total cost, storm sewer system flow pathway and associated outfall, current Tenant if applicable, and a description of activity. The inventory shall also describe if any structural or non-structural post-construction BMPs were installed or implemented. If no such controls were installed, the inventory should so state.

iii.   HDOT-Harbors shall evaluate the feasibility of retrofitting all projects on the inventory with adequate Post-Construction BMPs. HDOT-Harbors shall develop a ranking system based on water quality improvements, suitability (e.g., land area), economic value, and cost analysis for all projects identified in the inventory. A detailed scope of the feasibility study shall be submitted by 270 days after the entry of the Consent Decree, for EPA and HDOH's review and approval. A final feasibility study shall be submitted no later than 240 days after EPA's and HDOH's approval of the scope of the feasibility study.

iv.   No later than four years after EPA approval of the final feasibility study, HDOT-Harbors shall start the construction of the retrofits of the three highest ranked projects. If there are delays beyond HDOT-Harbors control that prevent the start of construction of any of the three projects, HDOT-Harbors will submit revised schedule

to EPA and HDOH in accordance with Paragraph 6, as soon as HDOT-Harbors becomes aware of the potential for delay.

      b.      Project Applicability

      i.      Upon entry of the Consent Decree, HDOT-Harbors shall require all New Development and Redevelopment Projects to comply with the Post-Construction Stormwater Management Program. HDOT-Harbors shall not advertise any Construction Project nor award any construction contract unless and until the project design has been reviewed to ensure that appropriate permanent post-construction BMPs have been included in the project design and are included in the bid package, as necessary. The Post-Construction Stormwater Management Program Plan shall include: 1) a Permanent Post-Construction BMP Checklist, 2) BMP Standards and Technical Specifications as described in Paragraph 18.c below, 3) Inspection of Post-Construction BMPs as described in Paragraph 18.d below, 4) a tracking database as described in Paragraph 18.e below, 5) a plan for long-term Operation and Maintenance as described in Paragraph 18.f below, and 6) requirements for inspections to verify maintenance of permanent post-construction BMPs with follow-up enforcement as needed, as described in Paragraph 18.f below.

      c.      BMP Standards and Technical Specifications. HDOT-Harbors shall develop or adopt technical standards that govern the selection, installation, and maintenance of post-construction control measures implemented for New Development and Redevelopment Projects on HDOT-Harbors' Property. The technical standards shall be provided to all designers and contractors and incorporated into construction and development plans prior to HDOT-Harbors' approval. The technical standards shall

consider design storm duration and/or intensity, pollutants of concern generated at the site, maintainability, and other unique harbor features.

   d.  Oversight of Post-Construction Control Measure Installation. HDOT-Harbors shall have an inspection program for future New Development and Redevelopment Projects. Inspections will be conducted at multiple stages of construction to ensure the proper installation of all Source and Treatment Control measures. Inspections shall occur: 1) prior to commencement of construction; 2) during active construction to ensure construction is occurring in accordance with approved plans; and 3) upon completion of construction to ensure proper installation and maintainability. The inspections may be combined with other inspections provided they are conducted by trained personnel. Each inspection shall be reported in the ACR and shall be clearly linked to the referenced project and note the stage of the project and the dates of inspections.

   e.  Tracking Database. By entry of the Consent Decree, HDOT-Harbors shall implement an electronic inventory of Post-Construction BMP measures on all New Development and Redevelopment Projects. The inventory shall be used to record the location and maintenance obligations for Post-Construction BMP measures and be compatible with GIS or other mapping systems. See Paragraph 20.a below. The electronic system, at a minimum, should contain the following information: 1) project identifier; 2) location; 3) acreage; 4) control type and description; 5) date of acceptance; 6) date of maintenance agreement; 7) operation and maintenance plan; 8) maintenance records; 9) inspection dates and summary; 10) corrective actions; and 11) replacement or repair date.

f.      Long-Term Operation and Maintenance

i.      General. By entry of the Consent Decree, HDOT-Harbors shall ensure that all New Development and Redevelopment Projects subject to post-construction control measures requirements have an operation and maintenance plan, monitoring plan where applicable, and a process of verification of ongoing maintenance of installed controls. The operation and maintenance plan shall also include an estimate of anticipated annual maintenance costs for upkeep of Post-Construction BMP measures.

ii.      Tenant Operation and Maintenance. If the Post-Construction BMP measures are to be maintained by the Tenant, written conditions shall be placed in the revocable permit or lease agreement upon renewal, which require the Tenant to assume responsibility for the implementation of the operation and maintenance plan including an annual inspection. HDOT-Harbors shall require their Tenants to submit annual reports to HDOT-Harbors, demonstrating proper operation and maintenance.

g.      Inspection and Enforcement Program

i.      HDOT-Harbors shall conduct an annual inspection of all Post-Construction BMP measures to determine if controls and BMPs are in place, working properly, and if the operation and maintenance plan has been fully implemented. For Post-Construction BMP measures installed and maintained by Tenants, HDOT-Harbors may conduct this inspection as part of the Tenant Inspection Program. Inspection findings shall be documented in the database of post-construction control measures described in Paragraph 18.e. above.

ii.      HDOT-Harbors shall undertake enforcement action in accordance with the Enforcement Response Plan, as appropriate.

19.    Enforcement Response Plan. Within 30 days of entry, HDOT-Harbors shall submit an Enforcement Response Plan, for review and approval in accordance with Paragraph 6. After approval, HDOT-Harbors shall implement the Enforcement Response Plan and include it in the modified SWMP.

a.    The Enforcement Response Plan shall be designed to obtain compliance and deter non-compliance from all dischargers into HDOT-Harbors' MS4, utilize the full extent of Harbors' authority, including the authority to issue civil fines, and:

i.    Incorporate the definitions of Class I and Class II Violations set forth below, which are based on: 1) potential to discharge or cause environmental harm; 2) magnitude of the violation (e.g. failure to apply for Industrial or Construction Permit General Permit coverage); 3) duration of the violation; and 4) compliance history of the violator.

1)    Class I Violations: violations which are related to submittal of permit applications, BMP failure due to lack of maintenance, ongoing or imminent discharges of pollutants, other activities capable of causing imminent impact to the environment, or where the violator has a previous history of non-compliance.

2)    Class II Violations: violations that pose no significant impact on the environment and are easily preventable, or administrative in nature. Class II violations include record keeping, reporting, BMP maintenance or installation problems, or other activities when there is ample time for correction prior to the discharge of pollutants, and where the violator has not had a previous history of non-compliance.

b.      Within 30 days of entry of this Consent Decree, HDOT-Harbors

shall enter into a Memorandum of Agreement with HDOH to refer violations for

escalated enforcement. This agreement shall remain in place until HDOT-Harbors is

granted authority pursuant to state law to issue civil fines. HDOT-Harbors shall use its

best efforts to obtain authority to issue civil fines by December 31, 2014.

20.     Storm Sewer System Operation and Maintenance. Within 30 days of entry of this

Consent Decree, HDOT-Harbors shall submit a Storm Sewer System Operation and

Maintenance Program (SSS O&M Plan), for review and approval in accordance with

Paragraph 6. After approval, HDOT-Harbors shall implement the SSS O&M plan and

include it in the modified SWMP. The SSS O&M Plan shall establish recurring schedules

for inspection and cleaning of the entire storm sewer system as described below. The SSS

O&M Plan shall describe: 1) the range of operation and maintenance activities to be

performed, 2) timelines and recurring schedules for each activity, 3) departments and

personnel responsible for activity implementation, and 4) dates and timelines for

procurement of necessary equipment. The SSS O&M Plan shall address the provisions in

Paragraphs 20.a. through d.

a.      Storm Sewer System Mapping. Within 180 days after the delivery

of the geodatabase delivered by the Army Corps of Engineers under the Development of

Geographic Information System (GIS) Layers for State of Hawaiʻi, Department of

Transportation, Harbors Division Project as described in Appendix H (Army Corps of

Engineers Scope of Work), HDOT-Harbors shall create and submit a comprehensive

storm sewer system map that identifies all HDOT-Harbors assets including inlets,

manholes, pipes, above-ground drainage features, post-construction control measures,

and outfalls. HDOT-Harbors shall include areas where Harbor Property discharges directly to the Harbors or their tributaries and are at risk for flooding. The map shall be developed in GIS format and shall include relevant information for each asset class. For pipes, drainage features and outfalls this shall include the type of material, size, condition, and date of installation, if known. Data for inlets shall include type, condition and presence of stencil. The map shall allow for the determination of outfall drainage basins including the identification of up-gradient tributaries both within the HDOT-Harbors storm sewer system and where the system is connected to offsite tributary storm drain systems to the extent that information is included in the geodatabase delivered by the Army Corps of Engineers under the Army Corps of Engineers Scope of Work. To the extent that such information is not included in the geodatabase, HDOT-Harbors shall submit a schedule for adding the information by October 31, 2014, or another date agreed upon by EPA and HDOH. The map and associated GIS shall provide foundation data for the Asset Management System described below.

   b. Asset Management System. HDOT-Harbors shall develop and maintain an Asset Management System, which shall include an inventory of HDOT-Harbors' assets and a schedule for recurring inspection, cleaning, other maintenance, and renewal. The Asset Management System shall be capable of generating and tracking work orders for inspection, cleaning, and other maintenance and shall be capable of assisting HDOT-Harbors with prioritization of capital improvement projects. The Asset Management System shall be fully implemented not later than December 31, 2015 or within 180 days of completion of Storm Sewer System Mapping described in Paragraph 20.a.

c.   Storm Sewer System Inspections. As described in the SSS O&M Plan, and in accordance with the schedule described in the SSS O&M Plan, HDOT-Harbors shall conduct physical inspections of the storm sewer system to identify structural defects, trash and debris accumulation, and other constraints that limit the flow of stormwater. HDOT-Harbors shall also inspect areas where Harbor Property discharges directly to the Harbors or their tributaries and are at risk for flooding. The inspection of the storm sewer system can occur concurrently with the cleaning program required in Paragraph 20.d. Until the Asset Management System is operational, results of the inspection shall be maintained as described in the SSS O&M Plan. After the Asset Management System is operations, the schedule shall be maintained in the Asset Management System.

d.   Storm Sewer System Cleaning. The SSS O&M Plan shall include a cleaning schedule for the storm sewer system, and shall include an initial cleaning of all inlets, pipes (as necessary), drainage features and outfalls (as necessary) by 270 days after the entry of the Consent Decree, or another date agreed upon by EPA and DOH. Cleaning shall be accomplished by removing accumulated debris, trash, and sediment. HDOT-Harbors shall develop a recurring cleaning cycle that ensures that each inlet, and drainage feature are cleaned no less than once every five years following the initial cleaning. Outfalls will be cleaned as necessary.

i.   In the cleaning schedule, HDOT-Harbors shall identify 'hot spots' where there is a greater risk for potential discharges of pollutants to the storm sewer system, and describe the process for defining hot spots in the SSS O&M Plan. HDOT-Harbors shall implement appropriate BMPs, including more frequent cleaning and maintenance to minimize potential discharges of pollutants to the storm sewer system.

Until the Asset Management System is operational, this data shall be maintained as described in SSS O&M Plan.

      ii.    HDOT-Harbors shall require the tenant to develop and implement a schedule for routine cleaning of rail tracks at Kalaeloa Barbers Point Harbor to prevent discharge of pollutants to the receiving water.

## VII. CIVIL PENALTY

21.    Within seven days after entry of this Consent decree, HDOT shall pay a civil penalty of ***$1,200,000 plus interest*** from the date of HDOT's signature on this Decree. $600,000 shall be paid to the United States and $600,000 to HDOH. Interest shall be otherwise calculated in accordance with 28 U.S.C. § 1961. Interest shall continue to accrue until payment is made.

22.    Method of Payment.

      a.    Payment shall be made by FedWire Electronic Funds Transfer (EFT) to the U.S. Department of Justice in accordance with instructions to be provided to HDOT, following lodging of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the District of Hawaiʻi. At the time of payment, HDOT shall simultaneously send written notice of payment and a copy of any transmittal documentation (which should reference DOJ case number 90-5-1-1-07488/1 and the civil action number of this case) to the United States in accordance with Section XIV (Notification).

      b.    All payments to be made to the State of Hawaiʻi shall be made via a State of Hawaii Journal Voucher, to account No. S 15 342 H 1559 000 322 00 371.

Upon payment, HDOT shall provide a signed copy of the completed Journal Voucher, sent to:

> Clean Water Branch
> Environmental Management Division
> Department of Health
> Ala Moana Boulevard, Room 301
> Honolulu, HI 96814-4920

## VIII. STIPULATED PENALTIES

23.    Stipulated Penalty Amounts. If HDOT fails to comply fully and timely with the requirements of this Decree, including the compliance dates for each and every measure set forth in Section VI (Injunctive Relief) and with all requirements set forth in any applicable permits, HDOT shall pay Stipulated Penalties in the following amounts:

    a.    for each failure to conduct audits of each division according to the schedule and as described in Paragraph 10.d: $1,000 per day per violation;

    b.    for each failure to implement and track Tenant Stormwater Awareness Training as described in Paragraph 14(a)(ii)(1) and 14(f): $10,000 per annual training or per annual survey;

    c.    for each failure to update and maintain the stormwater management website as described by Paragraph 14(b): $1,000 per month per violation;

    d.    for each failure to install signs as required by Paragraph 14(c): $250 per day per sign;

    e.    for each failure to review plans, including using appropriate checklists, as required by Paragraphs 17 and 18: $2,500 for each plan;

    f.    For each failure to develop and maintain an electronic database of all active construction sites as required by Paragraph 17, and post-construction control

measures as required by Paragraph 18: $1,500 per construction site or post-construction control measure;

g.      For each failure to develop a complete inventory of New Development and Redevelopment Projects since May 19, 2003 and conduct an evaluation of retrofit feasibility: $2,500 per project;

h.      For the failure to develop BMP standards and technical specifications as required by Paragraph 18: $1,000 per day;

i.      for each failure to properly install and maintain appropriate BMPs (including post-construction control measures) in accordance with applicable plans, permits, and guidance documents: $1,500 per day per violation;

j.      for failure to conduct and record the inspections required by Paragraphs 16, 17, 18, and 20: $1,000 for each of the first ten violations; $2,500 for each of the next ten violations; and $5,000 for each subsequent violation;

k.      for each failure to create a storm sewer system map, an asset management system, or storm sewer system cleaning plan, as required by Paragraph 20: $500 per violation per day;

l.      for each failure to implement the storm sewer cleaning on the schedule required by Paragraph 20(d): $500 per day;

m.      for failure to provide reports required under this Consent Decree, including the Annual Compliance Report: $500 per day for the first ten days of each violation; $1,000 per day for the next ten days of each violation; and $2,500 per day for each subsequent day of violation;

       n.     for each failure to timely submit or re-submit plans: $500 per day per plan;

       o.     for failure to conduct or document the training required by Paragraph 16: $1,000 per employee;

       p.     for failure to pay the civil penalty or accrued interest: $1,000 for each day that the payment is late; and

       q.     for violation of any other provision of this Consent Decree:  $500 per day per violation.

24.     Accrual of Stipulated Penalties. Stipulated Penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated Penalties shall accrue simultaneously for separate violations of this Consent Decree. Penalties shall accrue regardless of whether HDOT has been notified of a violation but need not be paid until a demand is made. HDOT shall pay any Stipulated Penalty within 30 days of receiving written demand therefore.

25.     Demand. The United States and/or HDOH, may seek Stipulated Penalties under this Section.

26.     Waiver of Stipulated Penalties. The United States or HDOH may, in the unreviewable exercise of its discretion, reduce or waive Stipulated Penalties otherwise due that sovereign under this Consent Decree. The determination by one sovereign not to seek Stipulated Penalties, or subsequently to waive or reduce the amount it seeks, shall not preclude the other sovereign from seeking Stipulated Penalties.

27.     Payment. HDOT shall, as directed by the United States in its demand, pay
Stipulated Penalties owing to the United States by EFT in accordance with Section VII,
Paragraph 22.a, above. Any payment of Stipulated Penalties shall be accompanied by a
transmittal memorandum referencing DOJ No. 90-5-1-1-07488/1 and the civil action
number and stating that payment of Stipulated Penalties is being made. HDOT shall pay
any Stipulated Penalties owing to HDOH in accordance with Paragraph 22.b.

28.     Interest. If HDOT fails to pay Stipulated Penalties according to the terms of this
Consent Decree, HDOT shall be liable for interest on such penalties, as provided for in
28 U.S.C. § 1961, accruing as of the date payment became due.

29.     No Effect on Obligation to Comply. The payment of Stipulated Penalties shall not
alter in any way HDOT's obligation to comply with the requirements of this Decree.

30.     No Waiver of Other Remedies. Subject to the provisions of Section XII of this
Consent Decree (Effect of Settlement/Reservation of Rights), the Stipulated Penalties
provided for in this Consent Decree shall be in addition to any other rights, remedies, or
sanctions available to the United States and HDOH for HDOT's violation of this Consent
Decree or applicable law. Where a violation of this Consent Decree is also a violation of
the Clean Water Act, HDOT shall be allowed a credit, for any Stipulated Penalties paid,
against any statutory penalties imposed for such violation.

31.     Effect of Dispute Resolution. Stipulated Penalties shall continue to accrue during
any dispute resolution period, but need not be paid until the following:

        a.      If the dispute is resolved by agreement or by a decision of EPA
that is not appealed to this Court, HDOT shall pay accrued Stipulated Penalties

determined to be owing to the United States and HDOH within 15 days of the agreement or the receipt of EPA's decision or order;

b.    If the dispute is appealed to the Court and the United States and HDOH prevail in whole or in part, HDOT shall pay all accrued Stipulated Penalties determined by the Court to be owed to the United States and HDOH within 30 days of receipt of the Court's decision or order, except as provided in Subparagraph c, below;

c.    If the District Court's decision is appealed by HDOT or by the United States and HDOH, HDOT shall pay all accrued Stipulated Penalties determined by the District Court to be owing to the United States and HDOH into an interest-bearing escrow account within 30 days of receipt of the Court's decision or order. Stipulated Penalties shall be paid into this account as they continue to accrue, at least every 30 days. Within 15 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to the United States and HDOH, or to HDOT, in accordance with the court's mandate.

## IX. FORCE MAJEURE

32.    Definition of Force Majeure. A "Force Majeure" event is any event beyond the control of HDOT, its contractors, or any entity controlled by HDOT that delays the performance of any obligation under this Consent Decree despite HDOT's best efforts to fulfill the obligation. "Best efforts" includes anticipating any potential Force Majeure event and addressing the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any resulting delay to the greatest extent possible. In no case shall any of the following circumstances give rise to a claim of Force Majeure: unanticipated or increased costs or expenses associated with implementation of this

44

Decree or changed financial circumstances; failure to apply for a required permit or approval, or to provide in a timely manner information required to obtain a permit or approval, that is necessary to meet the requirements of this Decree; failure by HDOT to approve contracts; failure by HDOT to secure federal funding; or failure by HDOT to fill all staffing positions.

33.    Required Notification. HDOT shall notify EPA and HDOH orally or by email as soon as possible, but not later than 72 hours after the time HDOT first knew of, or in the exercise of reasonable diligence under the circumstances should have known of, any event that might delay completion of any requirement of this Decree, whether or not the event is a Force Majeure event. HDOT shall make the oral or email notification to the United States required by this Paragraph by calling Ellen Blake at (415) 972-3496 or emailing: blake.ellen@epa.gov; in the event that HDOT is orally unable to reach Ellen Blake, such notification may be effective if HDOT leaves a detailed message explaining that notice is being provided pursuant to this Paragraph. HDOT shall make oral notification to HDOH by calling the HDOH Clean Water Branch, Enforcement Section Supervisor at (808) 586-4309 or emailing: CleanWaterBranch@doh.hawaii.gov; in the event that HDOT is orally unable to reach the Enforcement Section Supervisor, such notification may be effective if HDOT leaves a detailed message explaining that notice is being provided pursuant to this Paragraph. The United States and HDOH may designate alternative representatives to receive oral notification at their discretion by sending HDOT a written designation in accordance with Section XIV (Notification). Within seven days of providing oral notice, HDOT shall provide written notice to EPA and HDOH. The written notice HDOT submits pursuant to this Paragraph shall indicate

whether HDOT claims that the delay should be excused due to a Force Majeure event. The written notice shall describe in detail the basis for HDOT's contention that it has experienced, or may experience, a Force Majeure delay (if it intends to make such a claim); the anticipated length of the delay; the precise cause or causes of the delay; and the measures taken or to be taken to prevent or minimize the delay and the timetable by which those measures will be implemented. Failure to comply with the procedures of this Paragraph shall preclude HDOT from asserting any claim of Force Majeure.

34.      Procedures for Extension. If the United States agrees that a Force Majeure event has occurred or will occur, the United States may agree to extend the time for HDOT to perform the affected requirements for the time necessary to complete those obligations. An extension of time to perform the obligations affected by a Force Majeure event shall not, by itself, extend the time to perform any other obligation. Where the United States agrees to an extension of time, the appropriate modification shall be made pursuant to Section XV of this Consent Decree (Modification).

35.      Dispute Resolution. If the United States does not agree that a Force Majeure event has occurred, or does not agree to the extension of time sought by HDOT, the United States' position shall be binding, unless HDOT invokes Dispute Resolution under Section X of this Consent Decree. In any such dispute, HDOT bears the burden of proving, by a preponderance of the evidence, that each claimed Force Majeure event is a Force Majeure event; that HDOT gave the notice required by Paragraph 33, above; that the Force Majeure event caused any delay HDOT claims was attributable to that event; and that HDOT exercised best efforts to prevent or minimize any delay caused by the event.

## X. DISPUTE RESOLUTION

36.    Exclusive Remedy. Unless otherwise expressly provided for in this Decree, the

dispute resolution procedures of this Section shall be the exclusive mechanism to resolve

disputes between HDOT and the United States and HDOH arising under this Decree.

However, the procedures set forth in this Section shall not apply to actions by the United

States or HDOH to enforce obligations of HDOT that have not been disputed in

accordance with this Section. The procedures set forth in this Section shall not apply to

disputes between HDOH and the United States.

37.    Informal Dispute Resolution. Any dispute subject to dispute resolution under this

Consent Decree shall first be the subject of informal negotiations. The dispute shall be

considered to have arisen when HDOT sends the United States and HDOH a written

Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The

period of informal negotiations shall not exceed 20 days from the date the dispute arises,

unless that period is modified by written agreement of the United States, HDOH, and

HDOT. If the Parties cannot resolve a dispute by informal negotiations, then the position

advanced by the United States (after consultation with HDOH) shall be considered

binding unless, within 15 days after the conclusion of the informal negotiation period,

HDOT invokes formal dispute resolution procedures set forth in Paragraph 38, below.

38.    Formal Dispute Resolution.

        a.    Within 15 days after the conclusion of the informal negotiation

period, HDOT may invoke formal dispute resolution procedures by serving on the

United States and HDOH a written Statement of Position regarding the matter in dispute.

The Statement of Position shall include, but may not be limited to, any factual data,

analysis, or opinion supporting HDOT's position and any supporting documentation relied upon by HDOT.

b.      The United States and HDOH shall serve their Joint Statement of Position within 45 days of receipt of HDOT's Statement of Position. The Joint Statement of Position shall include, but may not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States and HDOH. The Joint Statement of Position shall be binding on HDOT, unless HDOT files a motion for judicial review of the dispute in accordance with Paragraph 39, below.

39.     Petitions to the Court. In the event that the Parties cannot resolve a dispute by informal or formal negotiations as set forth above, the following procedures shall apply:

a.      HDOT may seek judicial review of the dispute by filing with the Court and serving on the United States and HDOH a Motion requesting judicial resolution of the dispute. The Motion shall be filed within 10 days of receipt of the Joint Statement of Position set forth in Paragraph 38.b, above.

b.      The Motion shall attach all Statements of Position and shall contain a written statement of HDOT's position on the matter in dispute, including any supporting factual data, analysis, opinion, and documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree. HDOT shall serve such Motion on the United States and HDOH electronically and by overnight delivery.

    c.    The United States and HDOH shall jointly respond to HDOT's Motion within 30 days of the service of the Motion. The United States and HDOH agree to serve their Joint Response electronically and by overnight delivery.

    d.    HDOT may file a reply memorandum within 10 days of service of the Joint Response.

    e.    Standard and Scope of Review. In any dispute brought under this Paragraph, HDOT shall bear the burden of demonstrating that its position clearly complies with the Clean Water Act and the Act's implementing regulations and that Defendant is entitled to relief under applicable law. The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law.

40.    Effect on Other Obligations. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of HDOT under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated Penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 38, above. If HDOT does not prevail on the disputed issue, Stipulated Penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI. INFORMATION COLLECTION AND RETENTION

41.    The United States, HDOH, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

       a.     monitor the progress of activities required under this Consent Decree;

       b.     verify any data or information submitted to the United States or HDOH in accordance with the terms of this Consent Decree;

       c.     obtain samples and, upon request, splits of any samples taken by HDOT or its representatives, contractors, or consultants;

       d.     obtain documentary evidence, including photographs and similar data; and

       e.     assess HDOT's compliance with this Consent Decree.

42.    Upon request, HDOT shall provide EPA and HDOH, or their authorized representatives, splits of any samples taken by HDOT. Upon request, EPA and HDOH shall provide HDOT splits of any samples taken by EPA or HDOH.

43.    Until five years after the termination of this Consent Decree, HDOT shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relates in any manner to HDOT's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary institutional policies or procedures. At any time during this information-retention period, the United States or HDOH may request copies of any documents, records, or other information required to be maintained under this Paragraph.

44.     At the conclusion of the information-retention period provided in the preceding

Paragraph, HDOT shall notify the United States and HDOH at least 90 days prior to the

destruction of any documents, records, or other information subject to the requirements of

the preceding Paragraph and, upon request by the United States or HDOH, HDOT shall

deliver any such documents, records, or other information to EPA or HDOH. HDOT may

assert that certain documents, records, or other information is privileged under the

attorney-client privilege or any other privilege recognized by federal law. If HDOT

asserts such a privilege, it shall provide the following: (1) the title of the document,

record, or information; (2) the date of the document, record, or information; (3) the name

and title of each author of the document, record, or information; (4) the name and title of

each addressee and recipient; (5) a description of the subject of the document, record, or

information; and (6) the privilege asserted by HDOT. However, no documents, records,

or other information created or generated pursuant to the requirements of this Consent

Decree shall be withheld on grounds of privilege.

45.     HDOT may also assert that information required to be provided under this Section

is protected as Confidential Business Information (CBI) under 40 C.F.R. Part 2. As to any

information that HDOT seeks to protect as CBI, HDOT shall follow the procedures set

forth in 40 C.F.R. Part 2.

46.     This Consent Decree in no way limits or affects any right of entry and inspection,

or any right to obtain information, held by the United States or HDOH pursuant to

applicable federal or State laws, regulations, or permits, nor does it limit or affect any

duty or obligation of HDOT to maintain documents, records, or other information

imposed by applicable federal or State laws, regulations, or permits.

## XII. EFFECT OF SETTLEMENT

47.    This Consent Decree resolves the civil claims of the United States and HDOH for

the violations alleged in the Complaint filed in this action through the date of lodging.

48.    The United States and HDOH reserve all legal and equitable remedies available to

enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 47.

This Consent Decree shall not be construed to limit the rights of the United States or

HDOH to obtain penalties or injunctive relief under the Act or its implementing

regulations, or under other federal or State laws, regulations, or permit conditions, except

as expressly specified in Paragraph 47.

49.    This Consent Decree is not a permit, or a modification of any permit, under any

federal, State, or local laws or regulations. HDOT is responsible for achieving and

maintaining complete compliance with all applicable federal, State, and local laws,

regulations, and permits; and HDOT's compliance with this Consent Decree shall be no

defense to any action commenced pursuant to any such laws, regulations, or permits. The

United States and HDOH do not, by their consent to the entry of this Consent Decree,

warrant or waver in any manner that HDOT's compliance with any aspect of this Consent

Decree will result in compliance with provisions of the Act or its implementing

regulations or with any other provisions of federal, State, or local laws, regulations, or

permits. Notwithstanding the United States' or HDOH's review and approval of any data,

reports, or plans submitted pursuant to this Decree, HDOT shall remain solely

responsible for compliance with this Decree.

50.    This Consent Decree does not limit or affect the rights of HDOT or of the United

States or HDOH against any third parties, not party to this Consent Decree, nor does it

limit the rights of third parties, not party to this Consent Decree, against HDOT, except as otherwise provided by law.

51.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIII. MISCELLANEOUS

52.     Headings. Headings in this Decree are provided for convenience only and shall not affect the substance of any provision.

53.     Costs of Suit. The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and HDOH shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any Stipulated Penalties due but not paid by HDOT.

## XIV. NOTIFICATION

54.     When written notification or communication is required by the terms of this Decree, such notification or communication shall be addressed to the following individuals at the addresses specified below (or to such other addresses as may be thereafter designated by written notice to the parties):

As to the United States:

Chief, Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
Re: DOJ # 90-5-1-1-07488/1

As to EPA:

Chief, Water II Enforcement Office
Enforcement Division, ENF 3-2
U.S. EPA, Region 9

75 Hawthorne St.
San Francisco, CA 94105

As to HDOH:

Clean Water Branch
Enforcement Section Supervisor
Department of Health
Ala Moana Boulevard, Room 301
Honolulu, Hawaiʻi  96814-4920

and

Edward G. Bohlen
State of Hawaiʻi
Department of the Attorney General
Environmental Division
465 South King Street
Honolulu, Hawaiʻi 96813


As to HDOT:

Ford Fuchigami
Interim Director, Hawaiʻi Department of Transportation
869 Punchbowl Street
Honolulu, Hawaiʻi 96813-5097

and

H. Ramsey Ross
State of Hawaiʻi
Department of the Attorney General
Land/Transportation Division
465 South King Street
Honolulu, Hawaiʻi 96813

55.     Notifications to or communications with HDOT, HDOH, EPA, or the United

States shall be deemed submitted:

           a.     when required to be sent by mail, on the date they are postmarked

and sent by certified mail, return receipt requested;

b.     when required to be sent by overnight delivery, on the date they are picked up by the overnight delivery service; or

c.     when required to be made electronically, on the date they are sent by electronic mail with confirmation of receipt.

## XV. MODIFICATION AND TERMINATION

56.     Modification. The deadlines set forth in Section VI (Injunctive Relief) of this Decree may be modified, and those and other non-material modifications of this Decree shall be made by written agreement of the parties with notification to the Court. Where any modification constitutes a material change to any term of this Decree, it shall be effective only upon written agreement of the Parties and approval by the Court.

57.     Request to Terminate Decree. No sooner than five years after entry of this Decree, HDOT may request the United States and HDOH's consent to termination of this Decree. In seeking such consent, HDOT shall provide a written report to the United States and HDOH that demonstrates:

a.     HDOT has paid all civil penalties, Stipulated Penalties, and interest due under this Decree;

b.     There are no unresolved matters subject to Dispute Resolution pursuant to Section X (Dispute Resolution);

c.     No enforcement action under this Decree is pending; and

d.     HDOT has fully and successfully completed the compliance requirements set forth in Section V (Injunctive Relief).

58.     Response to Request for Termination

      a.      If the United States and HDOH agree that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

      b.      If the United States and HDOH do not agree that the Decree may be terminated, HDOT may invoke Dispute Resolution under Section X of this Decree. However, HDOT shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 38 of Section X, until 60 days after service of its Request for Termination.

## XVI. INTEGRATION

59.    This Consent Decree and its Appendices constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersede all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than the Appendices, which are attached to and incorporated in this Decree, and submittals that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XVII. APPENDICES

60.    The following appendices are attached to and incorporated into this Consent Decree:

Appendix A: Audit Provision

Appendix B: Tenant Inspection Program Manual

Appendix C: Outfall Reconnaissance Inventory and Inspection Plan Manual

Appendix D: Enforcement Response Plan (to be submitted for approval)

Appendix E: Construction Site Runoff Control Program Manual

Appendix F:  Post-Construction Stormwater Management Program Manual

Appendix G: Storm Sewer System Operation and Maintenance Program (to be submitted

for approval)

Appendix H: Development of Geographic Information System (GIS) Layers for State of

Hawaiʻi, Department of Transportation, Harbors Division Project by ACOE

## XVIII. ENTRY AND FINAL JUDGMENT

61.     Authority to Sign Decree. The undersigned representatives of HDOT certify that

they are authorized to enter into and to execute this Decree and to legally bind HDOT to

the terms and conditions of the Decree and that they meet the requirements for authorized

signatory found in 40 C.F.R. § 122.22. The undersigned representatives of HDOH and

the United States each certifies that he or she is authorized to enter into and to execute

this Decree and to legally bind the Party that he or she represents to the terms and

conditions of the Decree.

62.     Counterparts. This Consent Decree may be signed in counterparts, and its validity

shall not be challenged on that basis.

63.     Designation of Agent for. HDOT shall identify on the attached signature page the

name and address of an agent who is authorized to accept service of process by mail on

HDOTs behalf with respect to all matters arising under or relating to this Decree. HDOT

agrees to accept service in that manner and to waive the formal service requirements of

Federal Rule of Civil Procedure 4 and 5 and any applicable local rules of this Court, including, but not limited to, service of summons.

64.     Public Notice. This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. HDOT agrees not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified HDOT in writing that it no longer supports entry of the Decree.

65.     Final Judgment. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, HDOH, and HDOT. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Federal Rule of Civil Procedure 54 and 58.

66.     Retention of Jurisdiction. The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X and XV, or effectuating or enforcing compliance with the terms of this Decree.

SO ORDERED AND APPROVED.
DATED:  Honolulu, Hawaii, November 5, 2014.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

We hereby consent to entry of the foregoing Consent Decree, subject to the Notice and Comment Provisions of 28 C.F.R. § 50.7 and Paragraph 64 of this Decree:

FOR THE UNITED STATES OF AMERICA

Date: 8/30/14

SAM HIRSCH
Acting Assistant Attorney General
Environment and Natural Resources Div.
U.S. Department of Justice
Washington, D.C. 20530

Date: 9/5/14

JAMES A. LOFTON
Counsel to the Chief
Environmental Enforcement Section
Environment and Natural Resources Div.
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-2445
jim.lofton@usdoj.gov

We hereby consent to entry of the foregoing Consent Decree, subject to the Notice and Comment Provisions of 28 C.F.R. § 50.7 and Paragraph 64 of this Decree:

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY

Date: _____

_____
CYNTHIA GILES
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Ariel Rios Building, 2241-A
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Date: _____

_____
KELLY BRANTNER
Office of Civil Enforcement
Water Enforcement Division
U.S. Environmental Protection Agency,
Mail Code 2243A
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

SETTLEMENT CONFIDENTIAL SUBJECT TO FRE 408

60

We hereby consent to entry of the foregoing Consent Decree, subject to the Notice and Comment Provisions of 28 C.F.R. § 50.7 and Paragraph of this Decree:

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY

Date: _6/27/14_

CYNTHIA GILES
Assistant Administrator
Office of Enforcement and Compliance
Assurance
U.S. Environmental Protection Agency
Ariel Rios Building, 2241-A
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Date: _6/27/14_

KELLY K. BRANTNER
Office of Civil Enforcement
Water Enforcement Division
U.S. Environmental Protection Agency,
Mail Code 2243A
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

We hereby consent to entry of the foregoing Consent Decree, subject to the Notice and Comment Provisions of 28 C.F.R. § 50.7 and Paragraph 64 of this Decree:

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY

Date: _8/20/14_

JARED BLUMENFELD
Regional Administrator
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, California  94105

Date: _8/14/2014_

ELLEN BLAKE
Assistant Regional Counsel
U.S. EPA, Region 9
75 Hawthorne Street
San Francisco, California  94105
(415) 972-3496
Blake.ellen@epa.gov

We hereby consent to entry of the foregoing Consent Decree, subject to the Notice and Comment Provisions of 28 C.F.R. § 50.7 and Paragraph 64 of this Decree:

FOR THE HAWAIʻI DEPARTMENT OF HEALTH

Date: 8/14/14

GARY GILL
Deputy Director for Environmental Health,
Hawaiʻi Department of Health
1250 Punchbowl Street
Honolulu, Hawaiʻi 96813

Date: 8/14/14

EDWARD G. BOHLEN
Deputy Attorney General
Health and Human Services Division
Department of the Attorney General
465 South King St., Room 200
Honolulu, Hawaiʻi 96813
(808) 587-2994
Edward.G.Bohlen@hawaii.gov

We hereby consent to entry of the foregoing Consent Decree, subject to the Notice and Comment Provisions of 28 C.F.R. § 50.7 and Paragraph 64 of this Decree:

FOR THE HAWAI'I DEPARTMENT OF TRANSPORTATION

Date: _8.13.14_

FORD FUCHIGAMI
Interim Director, Hawai'i Department of
Transportation
869 Punchbowl Street
Honolulu, Hawai'i 96813

Date: _8/13/14_

H. RAMSEY ROSS
Deputy Attorney General
Land/Transportation Division
Department of the Attorney General
465 South King St., Room 300
Honolulu, Hawai'i 96813
(808) 587-2994
H.Ramsey.Ross@hawaii.gov